NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN HOME MORTGAGE CORP., and AMERICAN HOME MORTGAGE ACCEPTANCE, INC., <br><br> Plaintiffs, <br> v. <br><br> FIRST AMERICAN TITLE INSURANCE COMPANY, <br> Defendant. | CIVIL ACTION NO. 07-01257 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

Plaintiffs American Home Mortgage Corp. and American Home Mortgage Acceptance, Inc. (collectively "American Home") filed the Complaint in this action against Defendant First American Title Insurance Company ("First American"), alleging fraud and breach of contract. This matter comes before the Court on First American's motion to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure. The Court has decided this motion on the written submissions of the parties. Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion is denied.[1]

I.  **Factual and Procedural History**

The facts of this case arise as part of large-scale Ponzi scheme, allegedly orchestrated by New Jersey Affordable Homes Corp. ("NJAH") and its president, Wayne Puff ("Puff"). See

---

[1] As an initial matter, the adjudication of Count III of Plaintiffs' Complaint–breach of contract under the title insurance policies–does not concern any of the absent parties at issue in this motion and defendant provides no other grounds on which Count III should be dismissed; therefore, the Court will deny Defendant's motion as to Count III.

Compl. ¶ 8.[2] The gravamen of this action–the program that NJAH and Puff devised to defraud nearly 500 investors of millions of dollars–is also part of an action filed in this Court by the Securities and Exchange Commission on September 15, 2007. Id. at ¶¶ 18-20. NJAH submitted a voluntary bankruptcy petition under Ch. 7 of the Bankruptcy Code on November 22, 2005 and is currently under the direction of a Trustee of the Estate of the Debtor. Id. at ¶¶ 21-22. The Trustee has sought approval of the Bankruptcy Court for the invalidation of hundreds of liens, including those arising under the circumstances of this case. See id. at ¶ 22.

Plaintiffs are national mortgage lenders for residential real estate incorporated under the laws of New York and Maryland respectively. Id. at ¶¶ 1-2. Defendant is an underwriter for property title insurance for approved local agents incorporated under the laws of California. Id. at ¶ 4. Plaintiffs' claims exceed $75,000. See id. at Prayer for Relief. Thus, the Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

During the time relevant to this action, NJAH was in the real estate investment business and induced individual and institutional investors–including American Home–to invest funds in return for mortgages. Id. at ¶¶ 9, 10. The subject of this action is seven real properties located throughout northeast New Jersey (collectively, the "Properties").[3] Id. at ¶ 3. In the NJAH scheme

---

[2] The Court takes the facts recited herein from Plaintiff's Complaint, as it must for purposes of a motion to dismiss. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000).

[3] The properties are: 385 Amherst Street, East Orange, NJ; 88-90 Lindsley Avenue, Newark, NJ; 136 S. Munn Avenue, East Orange, NJ; 159 Myrtle Avenue, Irvington, NJ; 552 Norwood Street, East Orange, NJ; 23 Oak Street, East Orange, NJ; and 107-109 Sunset Avenue, #1R, Newark, NJ. Compl. at ¶ 3.

generally, the value of the mortgages allegedly exceeded the value of the properties for which they were issued. Id. Investors received secured promissory notes from NJAH, granting first or second mortgages on the respective properties, and offering rates of return at 15% compounded annually for primary mortgages and up to 20% compounded annually for secondary mortgages. Id. at ¶ 13. The participator's agreement into which all investors entered with NJAH provided the following terms: (1) investor's funds would be (a) deposited with one of NJAH's attorneys, including George Otlowski ("Otlowski") and (b) released only to secure a first mortgage; (2) the interest rate would (a) remain at a rate between 15% and 25% compounded and (b) accrue and not be paid until the end of the term; (3) the mortgage loan would not exceed 70-75% of the value of the property after NJAH had performed renovations on the property; (4) investors would be charged a 25% penalty if they requested the interest be paid prior to the end of the term; and (5) the investment was on an automatic roll-over plan unless the investor notified NJAH otherwise. Id. at ¶ 14.

NJAH and Puff induced investors–including American Home–to take title to NJAH properties while NJAH/Puff used the particular investor's credit to acquire further properties. Id. at ¶¶ 23-24. The investor would not be required to make the down payment on the property or pay any other costs. Id. at ¶ 25. Puff would arrange for false settlement statements, obscuring the true nature of the transactions. Id. Further, Puff persuaded investors to borrow funds in the investors' own names from financial institutions, including American Home, while the proceeds of the loan would be turned over to NJAH. Id. In addition, Puff would provide the investors with an attorney–or provide the name of the attorney for the investor to hire. Id. at ¶ 26. NJAH and Puff selected settlement agents for the Properties while First American underwrote the title

insurance for the Properties. See id. at ¶ 32.

From approximately March 2005 through July 2005, property owners took title to the Properties in which promissory notes were executed in favor of Plaintiffs. Id. at ¶¶ 34-35. The respective borrowers granted mortgages to Plaintiffs in order to secure the notes. Id. at ¶ 36. In closings for five of the seven Properties, either Otlowski or Mitchell Fishman ("Fishman")–both NJAH attorneys–acted as the closing agent while County Line Title Agency, Inc. ("County Line") did so for the closings on the remaining two Properties. Id. at ¶ 38; see id. at ¶ 47. None of Otlowski, Fishman or County Line performed the closings in accordance with American Home's closing instructions nor did they pay out the funds in accordance with the HUD-1 Settlement Statements, despite fraudulently certifying that they had done both. Id. at ¶¶ 41, 42.[4] First American had contracted with each of Otlowski, Fishman and County Line to serve as its agents in issuing title insurance. Id. at ¶ 47.

On March 15, 2007, American Home filed the Complaint in this action charging First American with fraud based on First American's agency relationship with Otlowski, Fishman and County Line, breach of contract of the Closing Service Letter contracted to by American Home and First American, and breach of contract of the Title Insurance Policy on each of the Properties. First American now moves to dismiss the Complaint for failure to join Otlowski, Fishman, County Line, Puff, NJAH, Jeffrey Neuman ("Neuman"), Carol Edelman ("Edelman"),

---

[4] Plaintiff claims that the activities of First American's closing agents "caused each of the [mortgage loans on the Properties] to become part of NJAH's fraudulent scheme". Compl. ¶ 43.

4

and United Funding Capital, Inc. ("United Funding") (collectively, the "Non-Parties").[5] See Def. Mot. to Dismiss; Def. Reply Mem. at 2. First American maintains that the Court will have to examine the conduct of the Non-Parties prior to determining First American's liability. Def. Mot. to Dismiss at 6. Plaintiff counters that none of the above-named parties are necessary pursuant to Rule 19 for purposes of adjudicating its claims. Pl. Opp'n Br.

## II.  Legal Standard

A defendant may move to dismiss a complaint for plaintiff's failure to join an indispensable party. See Fed. R. Civ. P. 12(b)(7), 19. In reviewing a motion to dismiss under Rules 12(b)(7) and 19, the court must accept all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. See Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 805 (3d Cir. 2003). It is the movant's burden to prove that a non-party is indispensable to the adjudication of the action. Fed. Home Loan Mortgage Corp. v. Commonwealth Land Title Ins. Co., No. 92-5255, 1993 WL 95494, at *5 (E.D. Pa. March 31, 1993).

Rule 19 governs when joinder of a party is mandatory. Courts considering a Rule 19 motion must undertake a two-step inquiry. See Gen. Refractories Co. v. First State Ins. Co., --

---

[5] Edelman was the borrower in three of the transactions at issue while Neuman, Edelman's husband, acted as her attorney-in-fact, executing the promissory notes and mortgage documents in favor of Plaintiffs. Compl. ¶¶ 30, 34, 39. Plaintiffs allege that Neuman owns United Funding, a mortgage brokerage company incorporated upon instructions from Puff and funded by an NJAH investor. Id. at ¶ 30.

    Curiously, First American failed to name exactly which parties it believed were "necessary" and "indispensable" to the action in its opening brief. It only named the individuals in its reply brief, at Plaintiffs' prompting. Because the Court denies Defendant's motion, it will consider the parties Defendant names in its reply even though it was the first time Defendant named specific absent parties.

F.3d--, 2007 WL 2416771, at *3 (3d Cir. Aug. 28, 2007); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993). The initial determination the court must make is whether the absent party is "necessary" to the action under Rule 19. Gen. Refractories Co., 2007 WL 2416771, at *3. A party is "necessary" under Rule 19(a) if joinder is feasible. See Fed. R. Civ. P. 19(a).[6] If the court determines the party is "necessary", the party must be joined. Gen. Refractories Co., 2007 WL 2416771, at *3. If a party does not satisfy the requirements of 19(a), the Court need not inquire further. Temple v. Syntheses Corp., 498 U.S. 5, 8 (1990). If the party is necessary, but may not feasibly be joined under Rule 19(a), the court must turn to the second step in the inquiry. See id.

Where the court determines that a party must be joined under Rule 19(a), but doing so would be procedurally infeasible (e.g., where joinder of the party would destroy diversity of the parties and thus, jurisdiction of the court), the court looks to Rule 19(b) to determine if "in equity and good conscience," the party is "indispensable"--that is, whether "the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b); see Janney, 11 F.3d at 405.[7]

---

[6] Rule 19(a) provides in pertinent part: "A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of that claimed interest." Fed. R. Civ. P. 19(a).

[7] In its evaluation of whether a party is "indispensable" to an action, a court looks at four factors: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the

### III. Legal Analysis

### A. Rule 19(a)[8]

The Court initially looks to Rule 19(a) to determine the feasibility of joining the party in dispute. Courts treat clauses (1) and (2) of Rule 19(a) disjunctively--if a party satisfies either subsection, the party is deemed "necessary". See General Refractories Co., 2007 WL 2416771, at *3. Thus, even if a court decides that complete relief can be granted, it still must look to the two parts of Rule 19(a) to determine the necessity of joining a non-party. See id.

Defendants correctly argue that Neuman, Edelman, and United Funding cannot be considered under Rule 19(a) due to the Court's December 5, 2005 Order (the "Order") entering a litigation stay. Def. Reply Br. at 2. The Order enjoins "all Persons . . . from taking . . . action[] .

---

plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

[8] In its reply brief, First American asserts that it cannot be held liable for the fraudulent acts alleged because the title policies for the Properties control the obligations between the parties and thus, "they do not have liability in tort to their insureds". Def. Reply Mem. at 3. Because Defendant raises this issue for the first time in its reply, the Court will not consider this argument. See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief"); D'Alessandro v. Bugler Tobacco Co., No. 05-5051, 2007 WL 1307898, at *2 (D.N.J. Jan. 12, 2007) ("A moving party may not raise new issues . . . in a reply brief that it should have raised in its initial brief. The reason for not considering new bases for relief raised for the first time in a reply brief is self-evident: No sur-reply is permitted, so the opponent has no opportunity to address the new defense" (internal citations omitted)). Moreover, the Court could not consider this argument had it decided to entertain it because Defendant did not provide the Court with a copy of any of the title insurance policies at issue in this action.

Alternatively, the case Defendant cites for the proposition that it is not liable in tort to Plaintiffs, Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 562 A.2d 208 (1989), is distinguishable. The action in Walker Rogge was one in which plaintiff-purchaser alleged that defendant-title insurer negligently surveyed the property in question. The Court held that the title insurer could not be liable for duties it performed negligently that were not contracted for by the parties. Here, Plaintiff has brought claims based on fraud and breach of contract against Defendants–not negligence.

. . against . . . (g) Any investor or third-party (the "Investors") who holds as of the date of this Order an interest in real or personal property and the proceeds thereof derived from transactions involving NJ Affordable . . . ." Order at ¶¶ 2(g), 3(a). Consequently, the Court will examine only Otlowski, Fishman and County Line under Rule 19(a). It will consider the necessity of joining Neuman, Edelman and United Funding under its analysis of Rule 19(b).

### 1.     Rule 19(a)(1)

Rule 19(a)(1) dictates that the Court examine first whether complete relief may be "accorded among those already parties" without the joinder of any absent party. See Fed. R. Civ. P. 19(a)(1) (emphasis added); Gen. Refractories Co., 2007 WL 2416771, at *3. In considering the completeness of the relief, the Court need not consider the "effect a decision may have on the absent part[ies]". Id. (citing Janney, 11 F.3d at 405).

American Home claims that complete relief can be accorded between itself and First American without joinder of any of the Non-Parties. See Pl. Opp'n Br. at 15-20. American Home's ability to fully recover from Defendant is made clear in the language of the title insurance policies (the "Policies") between Plaintiffs and Defendant: the Policies required Defendant to insure Plaintiffs for loss or damage sustained by way of "[a]ny defect in or lien or encumbrance on the title" or "[t]he invalidity or unenforceability of the lien of the insured mortgage upon the title". See Compl. ¶ 68. Plaintiffs thus should be able to fully recover from First American the damages it incurred based on the alleged defects and invalidity of its liens on the Properties and none of Otlowski, Fishman and County Line are necessary under Rule 19(a)(1).

Since the parties did not provide the Court with a copy of any of the Policies on the

Properties, the Court will also address Plaintiffs' argument on joint and several liability in case there are provisions in the policies that cut against those cited in the Complaint. If the Court finds that Fishman, Otlowski and County Line are joint tortfeasors with First American, the Court need not dismiss the action for failure to join indispensable parties. See Fed. R. Civ. P. 19 advisory committee's notes ("a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability"); Temple, 498 U.S. at 7 ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit"); Gen. Refractories Co., 2007 WL 2416771, at *4; Rodin Props.-Shore Mall v. Cushman & Wakefield of Pa., 49 F.Supp.2d 709, 720 (D.N.J. 1999). In New Jersey, "joint tortfeasor means two or more persons jointly or severally liable in tort for the same injury to person or property . . . . A . . . principal and agent shall be considered a single tortfeasor." N.J. Stat. Ann. 2A:53A-1. Thus, the specific question the Court must answer is whether Fishman, Otlowski and County Line were agents of First American.

If the Court determines that Otlowski, Fishman, and County Line were First American's agents, the Court can allow this action to proceed without joinder of these parties. Although the Third Circuit has never explicitly held as such, other courts have established that, like joint tortfeasors, a principal and its agent are not necessarily indispensable parties to an action even if both were allegedly involved in the wrongful acts at issue. Nottingham v. Gen. Am. Commc'ns Corp., 811 F.2d 873, 880 (5th Cir. 1987) ("Nor does [Rule 19] require joinder of principal and agent"); Milligan v. Anderson, 522 F.2d 1202, 1205 (10th Cir. 1975); Cass v. Sonnenblick-Goldman Corp., 287 F.Supp. 815, 818 (E.D. Pa. 1968); see Soberay Mach. & Equip. Co. v. MRF Ltd., Inc., 181 F.3d 759, 765-66 (6th Cir. 1999) (finding that an agent may be indispensable

under Rule 19 if there is an independent basis of liability against the agent); Yamaha Motor Corp. v. Ferrarotti, 242 F.R.D. 178, 182 (D. Conn. 2007) ("As either agent or joint tortfeasor, Venture is not required to be joined under Rule 19").

The contract between First American and County Line, entitled the "Agency Agreement," explicitly refers to County Line as First American's "Agent" throughout the entirety of the agreement, making it clear that First American is holding County Line out as its agent. See Def. Reply Br., Ex. A. Furthermore, in the first provision of the contract, "[First American] appoints [County Line] as its representative, or agent, to originate and solicit applications for title insurance, . . . conduct settlements in connection with applications for title insurance, and to issue and countersign Policies of Title Insurance". Id. at ¶ 1. The contract leaves little question as to whether First American understood County Line to be acting as its agent in performing closing duties on its behalf. The Agency Agreement also contains an indemnity clause, providing that County Line will indemnify First American for any loss it sustains on behalf of County Line's "fraudulent" or "criminal" conduct. See id. at ¶ 13(B).[9] Thus, based on the title insurance policy between American Home and First American, County Line need not necessarily be joined as complete relief will be accorded to American Home in this action with First American as the sole defendant.

First American contends that Otlowski and Fishman cannot be its agents because the respective Closing Service Letters ("CSL") between it and these two individuals contain written

---

[9] The provision provides, in relevant part, "Agent shall be liable to [First American] for all loss, cost or damage, including attorney's fees and other costs, which [First American] may sustain, or become liable for, on account of . . . [a]ny fraudulent, malicious, criminal or grossly negligent act, whether by Agent or by Agent's employees . . . in connection with . . .: A closing by the Agent . . . involving the issuance of a Policy of [First American]."

10

disclaimers of agency. Def. Reply Br. at 7.[10] Express disclaimers of agency do not necessarily negate the existence of the agency relationship. See First Liberty Investment Group v. Nicolsberg, 145 F.3d 647, 652 (3d Cir. 1998) ("[N]otwithstanding the Agreement's . . . disclaimer of an 'agent' relationship, [defendant] was an 'associated person' as to [plaintiff]"); Carr v. Stillwaters Dev. Co., L.P., 83 F.Supp.2d 1269, 1279 (M.D. Ala. 1999); In re Parmalat Secs. Litig., 377 F.Supp. 2d 390, 404 (S.D.N.Y. 2005) (stating that "written disclaimers of agency are not controlling, but merely raise an issue of fact with respect to an alleged agent's authority"); Restatement (Second) of Agency § 1 cmt. b ("The relation which the law calls agency does not depend on the intent of parties to create it, nor their belief that they have done so"). If courts routinely recognized disclaimers of agency, parties could conduct themselves as principal and agent without the legal ramifications that accompany that special relationship. See Carr, 83 F.Supp.2d at 1279. The key to determining the agency relationship is the principal's consent to the agent acting on its behalf and the principal's control of the agent. See Restatement (Second) of Agency § 1.

Here, the CSL specifies the manner in which the Issuing Agent or Attorney must perform the closing on behalf of First American–in accordance with the lender's closing instructions. Def. Reply Br., Ex. B at ¶ 1. In this way, First American has exerted its control over the behavior of its Issuing Agents or Attorneys. Defendants argue that the use of the disjunctive "or" between the words "Issuing Agent" and "Attorney" throughout the letter negates Otlowski's and

---

[10] Defendant only included a copy of the CSL authorizing Fishman as an exhibit to its opening brief; Defendant did not provide the Court with the CSL for Otlowski at any stage in the briefing on this motion. Thus, the Court will assume that the letter authorizing Otlowski to act on behalf of First American is the same in substance.

11

Fishman's agency as they were merely attorneys acting on First American's behalf. Def. Reply Br. At 7. The use of the conjunctive "or" between "Issuing Agent" and "Attorney" throughout the CSL does not negate any agency relationship between Otlowski or Fishman and First American. As stated above, the key to the agency relationship is the principal's control over the agent. Restatement (Second) Agency §§ 2(1), 2(2). Moreover, Plaintiffs sufficiently allege that Otlowski and Fishman acted as First American's agents in performing the closings on the respective properties at issue here and that First American "h[eld] itself out to the public as providing closing services through its closing agents." Cf. Jurimex, 65 Fed.Appx. at 807 (stating that "the failure to allege agency was fatal to... [the] argument that subsidiaries do not have to be joined" in considering a Rule 19 motion). .

    First American contends that County Line, Otlowski, and Fishman were not its agents, but rather were independent contractors hired to perform closing services. Def. Reply Br. at 5-7. Contrary to Defendant's assertion that the Court should consider County Line, Otlowski and Fishman independent contractors because they were allowed to contract with other companies, the hallmark of an "independent contractor" is that he is "not controlled" nor "subject . . . to control" by the principal. Restatement (Second) Agency § 2(3); see Baldasarre v. Butler, 132 N.J. 278, 291 (1993). Furthermore, an independent contractor "may or may not be an agent" of the principal depending on the factual circumstances of his retention. See Supermarkets Gen. Corp. v. W.H. Brownyard Corp., No. 91-6162, 1993 WL 21083, at *2 (E.D. Pa. Jan. 22, 1993) (quoting Columbia Broad. Sys., Inc. v. Stokely-Van Camp, 522 F.2d 369, 375 (2d Cir. 1975)).

    As established above, First American had separate contracts with each of the Otlowski, Fishman and County Line that controlled the way in which they were to perform closing services;

furthermore, First American accepted liability if the agents did not comply with these specifications in the CSLs and the Agency Agreement. While the Court agrees that "not every agent['s] . . . fault is attributable to [its] principal", JMB Enters. v. Atlantic Employers Ins., 228 N.J.Super. 610, 617 (1988), that paradigm does not apply here. Because the Court finds that County Line, Otlowski, and Fishman were joint tortfeasors with defendant First American and American Home thus can be granted complete relief without joining any of these non-party, County Line, Otlowski, and Fishman are not necessary parties under subsection (a)(1).

### 2. Rule 19(a)(2)

Notwithstanding a determination that complete relief may be accorded the entities already parties to the action, the Court still may determine that County Line, Otlowski, and Fishman are "necessary" pursuant to Rule 19(a)(2). See Gen. Refractories Co., 2007 WL 2416771, at *6. In fact, the Court must undertake an analysis under subsection (a)(2). See id. at *7. Here, the Court considers the effect that resolution of the dispute may have on any non-parties unlike the analysis under subsection (a)(1). See Fed. R. Civ. P. 19(a)(2).

#### a. Rule 19(a)(2)(i)

Under subsection (a)(2)(i), the Court must determine whether the non-parties will be impaired or impeded from protecting their interests in the subject matter of the litigation. See Fed. R. Civ. P. 19(a)(2)(i). The Court may consider whether an absent party has claimed any interest. See Wallkill 5 Assocs. II v. Tectonic Eng'g, P.C., No. 95-5984, 1997 WL 452252, at *8 (D.N.J. July 25, 1997) (recognizing that "[i]ndeed, [non-party] Poppe has not even claimed an interest in the subject of the action" in its Rule 19(a)(2) analysis). Defendants make no argument about the necessity of joining County Line, Otlowski, or Fishman under Rule 19(a)(2)(i); in

addition, none of these Non-Parties have claimed an interest in the subject matter of the action. Likewise, the adjudication of this action in federal court without joining County Line, Otlowski, or Fishman will not have any res judicata or collateral estoppel effect on any of the parties, or any binding effect at all. See Janney, 11 F.3d at 406-07. Accordingly, County Line, Otlowski, and Fishman's interest in the action will not be impaired or impeded if the action proceeds in their absence.

### b. Rule 19(a)(2)(ii)

Rule 19(a)(2)(ii) calls for the Court to examine whether proceeding without joining the absent parties will leave the parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations". See Fed. R. Civ. P. 19(a)(2)(ii). The fact that those already party to the action may bear the full damages and may have to claim contribution or indemnity from joint-tortfeasor non-parties does not mean the defendant is subject to multiple or inconsistent obligations. See Gen. Refractories Co., 2007 WL 2416771, at *9 (quoting Janney, 11 F.3d at 412). A judgment against First American in this action would not extinguish its ability to claim indemnification from any of the Non-Parties.[11] See id. ("An outcome adverse to defendant in the plaintiff's present action against it does not have any legal effect on whatever right of contribution or indemnification the defendant may have against [third parties]" (internal citations and quotations omitted)). Moreover, "a defendant's possible right of . . . indemnity or contribution against an absent party is not sufficient to make the absent party indispensable to the

---

[11] First American has provided for indemnification from County Line, Otlowski, and Fishman contractually. See Def. Reply Br. at Ex. A (Agency Agreement between First American and County Line); Def. Reply Br. at Ex. B (CSL between Fishman and First American). Any indemnification or contribution claims Defendant seeks to impose on Edelman, Neuman, or United Funding may be pursued after this Court's stay is lifted.

14


litigation." Wallkill 5 Assocs. II, 1997 WL 452252, at *8; see Janney, 11 F.3d at 412.

First American maintains that "by failing to name the parties responsible . . . American Home wants to hold First American liable for . . . ghost defendants['s] conduct" under Rule 19(a)(2)(ii), Mot. to Dismiss at 7, yet fails to provide any evidence of how it will be subject to multiple or inconsistent obligations with respect to Rule 19(a)(2)(ii) under these circumstances.[12] Thus, First American has not satisfied its burden of proving the necessity of County Line, Otlowski, and Fishman under Rule 19(a)(2)(ii) either.

Because none of County Line, Otlowski, and Fishman are "necessary" parties under Rule 19(a)(1) or (a)(2), they need not be joined for this action to proceed appropriately.

**B.     Rule 19(b)**

Defendant contends that even though Neuman, Edelman, and United Funding cannot feasibly joined under Rule 19(a) due to the Court's litigation stay, they are indispensable pursuant to Rule 19(b). See Def. Reply Br. at 2, 8-10. Analysis of indispensability under Rule 19(b) requires the Court, "in equity and good conscience" to determine whether the action should proceed with the currently-named parties or to dismiss the Complaint. See Fed. R. Civ. P. 19(b). The Court uses the four factors enumerated in Rule 19(b) to make this determination: these factors are not exhaustive, but they "are the most important considerations in determining whether a party is indispensable". Gen. Refractories Co., 2007 WL 2416771, at *9.

Under its Rule 19(b) argument, First American maintains that Neuman and United Funding were the primary tortfeasors for the actions alleged in Plaintiff's complaint and

---

[12] Defendant addresses the possibility of a "substantial risk of inconsistent judgments" under the Rule 19(b) analysis. See Mot. to Dismiss at 8-9. The Court will address that contention below under the appropriate analysis.

accordingly, are necessary parties to the action. See Def. Reply Br. at 8-9. Without naming the parties it deemed "indispensable" in its opening brief, Defendant makes two arguments: first, that American Home's failure to join certain parties is a way to "require First American to sue the primary actors, and bear the burden of proving their fraud" and second, that there is a risk of inconsistent judgments without these non-parties. Mot. to Dismiss at 8-9. Because the Court must undertake the Rule 19(b) analysis to determine whether Neuman, Edelman, and United Funding must be joined in this action, the Court will assume arguendo that County Line, Otlowski, and Fishman were necessary under Rule 19(a) and accordingly, also examines their indispensability under Rule 19(b). The Court concludes, however, that even under this analysis, none of these non-parties need be joined.

Under Rule 19(b), the first two factors the Court must consider are the prejudice the current parties would face in the absence of the non-parties and whether the Court can lessen or avoid such prejudice. Fed. R. Civ. P. 19(b). The analysis of the first factor is substantially the same as the Rule 19(a) analysis. See Gen. Refractories Co., 2007 WL 2416771, at *10. As discussed above, American Home can recover fully from First American despite the absence of other alleged tortfeasors, given the rules of joint and several liability. Thus, American Home will not face any prejudice in this action. First American will likewise not be subject to any prejudice in excluding the Non-Parties because it may claim contribution or indemnity from any of the six of them as joint tortfeasors. As the Third Circuit has recognized, "[a] defendant's right to contribution or indemnity from an absent . . . party does not render that absentee indispensable pursuant to Rule 19." Id. (quoting Janney, 11 F.3d at 412). Consequently, the first two factors weigh in favor of allowing Plaintiffs' Complaint to go forward at this stage.

The third factor under Rule 19(b) is "whether a judgment rendered in the [non-parties'] absence will be adequate". Fed. R. Civ. P. 19(b). Under analysis of this factor, the Court has the ability to consider whether the remedy it will grant to the plaintiff(s) will be sufficient. See Gen. Refractories Co., 2007 WL 2416771, at *11. Here, the Court can adequately resolve American Home's claims against First American as they will be adjudicated in one action. See Gardiner v. Virgin Islands Water & Power Auth., 145 F.3d 635, 642 (3d Cir. 1998) (finding the resolution of claims in "one action" persuasive in an analysis of the third 19(b) factor). The possibility that Defendant will claim contribution or indemnity from the Non-Parties does not cause the remedy to be inadequate as to either party. See id. ("The right to contribution or indemnity should not . . . be considered to cause inadequacy of the resulting judgment"). This factor thus weighs against the indispensability of the Non-Parties.

The fourth factor the Court considers in its Rule 19(b) analysis, "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder," likewise cuts in favor of allowing Plaintiffs' Complaint to proceed. Defendant argues that if the Court granted its motion, American Home would not sustain any harm as they could wait for the Court to lift the litigation stay and then bring another action against all the Non-Parties. See Mot. to Dismiss at 9 n.4. Without addressing whether American Home will sustain any harm if they are required to wait to bring their action, the Court finds that if Plaintiffs have no other sufficient remedy at this time, this action not being suited for adjudication in state court due to the diversity of citizenship among the parties, the action should not be dismissed for failure to join the Non-Parties.

**IV.  Conclusion**

For the foregoing reasons, the Court denies Defendant First American's motion to

17

dismiss Plaintiff's complaint for failure to join necessary and indispensable parties pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure. An appropriate order accompanies this opinion.

Date: November __, 2007                                    /s/ Jose L. Linares
                                                           United States District Judge